UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| TAMMY SUE REDMOND | ) |
| and | ) |
| STACIE SLUSHER | ) |
| *Plaintiffs* | ) |
| vs. | ) Civil Action No. |
| BELL COUNTY BOARD OF EDUCATION | ) |
| **SERVE:** Tom Gambrel<br>Superintendent<br>211 Virginia Ave<br>Pineville, KY 40977 | ) |
| and | ) |
| KENTUCKY DEPARTMENT OF EDUCATION | ) |
| **SERVE**: Dr. Jason Glass<br>300 Sower Blvd.,<br>5th Floor<br>Frankfort, KY 40601 | ) |
| *Defendants* | ) |

### VERIFIED COMPLAINT

Comes the Plaintiffs, Tammy Sue Redmond and Stacie Slusher, by counsel and for their Verified Complaint against Defendants, Bell County Board of Education and the Kentucky Department of Education, state as follows:

### INTRODUCTION

1. This is an action against the Bell County Board of Education and the Kentucky Department of Education for damages and other relief relating to their discrimination in failing to hire Tammy Sue Redmond and Stacie Slusher for a principal

position because of their age and/or sex. Plaintiffs, both women and over 50, applied for the vacant principal position at the Bell County ATC. At the time they applied, both held the necessary certification to be hired as a principal and were far more qualified than the other candidate. Neither of the Plaintiffs were selected. Instead, a 36-year-old man, who was not qualified for the position, because he did not hold a principal certification, was hired. After failing to hire Slusher, the Board further retaliated against her by changing the job posting from a business and marketing teacher to a business/special education teacher. The Board made this change so that Slusher would not qualify for the position because she was not certified to teach special education. The Board has further not considered Slusher's application for any of the other teacher positions that subsequently came open.

2. As a result of Defendants' wrongful conduct, Plaintiffs have suffered substantial damages, including lost wages as well as humiliation and emotional distress.

## PARTIES

3. The Plaintiff, Tammy Sue Redmond ("Redmond"), is and was at all relevant times hereto, a resident of the Commonwealth of Kentucky and an employee of the Bell County Area Technology Center ("Bell County ATC").

4. The Plaintiff, Stacie Slusher ("Slusher"), is and was at all relevant times hereto, a resident of the Commonwealth of Kentucky and an employee of the Laurel County Board of Education.

5. Defendant, Bell County Board of Education (the "Board"), is the statutorily constituted and duly authorized entity responsible for administration of the public education in Bell County, Kentucky.

6. Defendant, Kentucky Department of Education ("KDE"), controls and operates Bell County ATC, a separate entity from the Board.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the federal claims brought by Plaintiffs pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*, and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, because they raise federal questions pursuant to 28 U.S.C. § 1331.

8. Jurisdiction over any state law claims is conferred by 28 U.S.C. § 1367, which provides for supplemental jurisdiction over state law claims so related to federal law claims that one case or controversy exists.

9. Plaintiffs exhausted their administrative remedies by timely filing a charge of age and sex discrimination against Defendants with the EEOC. Slusher further filed a charge for retaliation.

10. Plaintiffs received their Notice of Suit Rights and bring this original action within ninety (90) days of receipt.

11. Pursuant to 28 U.S.C. § 1391, venue is proper in the Eastern District of Kentucky, the judicial district in which all of the events giving rise to the claim occurred.

## FACTS

### I. Background

12. KDE, through the Office of Career and Technical Education, controls and operates 51 area technology centers throughout the Commonwealth, including the Bell County ATC.

13. The Bell County ATC has existed since 1966 and has never employed a female principal.

14. The Board is a non-profit educational school district existing and organized pursuant to KRS 160.160. Tom Gambrel ("Gambrel") is the superintendent of the Board.

15. While the Bell County ATC serves the students of the Board, it is a separate entity from the Board and is operated and controlled by the KDE.

16. Redmond is over 50 years old and has been a health science instructor at the Bell County ATC for 25 years.

17. Slusher is over 50 years old and has been teaching for 15 years, with the last 10 years spent teaching business and science at Laurel County High School.

18. Matthew Gann ("Gann") is 36 years old man that has been teaching at Bell County High School for only 9 years. During his first 3 years of teaching, Gann did not hold a teaching certification. Instead, he taught under a Temporary Provisional Certification issued by the Kentucky Education Professional Standards Board ("EPSB")[1] because he had not completed the necessary coursework to be eligible for a teaching certification.

II. **Bell County ATC's Principal Retires and an MOA for the Position is Initiated**

19. In August of 2020, Bell County ATC's principal, David Sowders, accepted a position at the Middlesboro Independent School district.

20. While he was principal, Sowders had designated Redmond as the unofficial assistant principal to assist him in performing his job duties.

21. At the time he retired, Sowders designated Redmond as a fill-in principal until the KDE hired someone.

---

[1] The EPSB issues administrative licensure to qualified candidates for superintendent, principal, and teaching positions.

4

22. Between August and November 2020, Redmond performed the job duties of principal for the 3 school districts associated with Bell County ATC, in addition to teaching health science.

23. In performing the duties of principal, Redmond met with Gambrel and Brian Crawford, Bell County High School Principal, in August to discuss the direction and future of the Bell County ATC for the upcoming school year.

24. After this meeting, neither Gambrel nor Crawford raised any concerns about the direction Redmond had discussed for the school.

25. Redmond was also the point of contact for the KDE. Sarah Marth contacted her on several occasions about school platforms and the hours worked by the teachers, among other things.

26. On September 15, 2020, the Board approved "the FY 21 Area Technology Center Principal Memorandum of Agreement with the Kentucky Department of Education" upon the recommendation of Gambrell.

27. At this time, no memorandum of agreement ("MOA") existed.

28. The process for initiating an MOA did not begin until the following day, when Beth Hargis, Director of KDE's Office of Career and Technical Education, emailed another KDE employee inquiring about the process, because the Board "decided [it] d[id] not want [KDE] to hire the principal and they want to do an MOA."

29. On September 18, Hargis spoke with Gambrel regarding the MOA, and during this call, Gambrel agreed to have Sarah Marth, Eastern Director for KDE Office of Career and Technical Education, participate in the interview committee and supervise the principal hired.

5

30. After agreeing to these conditions, the KDE initiated the MOA process and submitted a contract request on September 23.

31. After the request was submitted, Gambrel posted the principal position on the Kentucky Educator Placement Service website, listing the start date as October 15.

32. Other than identifying the position as being the Bell County ATC principal, no other information was included in the posting.

33. Gambrel's job posting violated Board Policy 3.11 (Hiring) in that in failed to describe the duties for the position as well as set forth the qualifications needed for the position.

34. The MOA was subsequently drafted, and the scope of the contract was for reimbursement for a principal at the Bell County ATC.

35. According to the terms of the MOA, "The KDE and [the Board] through their superintendent, shall agree on a [Board] employee to be assigned to the Bell County Area Technology Center [ ] as the Bell County Area Technology Center principal."

36. The MOA further required the principal to "be under the joint supervision of KDE and the [Board] Superintendent," and if a conflict arose in supervision, "the KDE maintain[ed] ultimate authority for the direction of the [ ] Principal as long as this agreement remains in force."

37. Finally, the MOA required the Board "certified employee serving as principal" to be bound by the policies and procedures of the Board, the policies, procedures and regulations of KDE for the Office of Career and Technical Education, and the requirements of EPSB.

38. After the position was posted, Slusher, Redmond, and Gann applied.

39. On October 6, 2020, Marth sent Gambrel an email reminding him that she would be participating in the interviews and further asking why the MOA had not yet been signed when the start date was October 15.

40. The MOA was subsequently signed by Gambrel and then recorded by the KDE on October 9, 2020.

### III. Qualifications for the Principal Position

41. According to Board Policy 3.11 (Hiring), the superintendent was authorized to hire "certified personnel," but the superintendent had to "employ only individuals who are certified for the positions they will hold and who possess qualifications established by law, regulation and Board policy, except in the case where no individual applies who is properly certified...."

42. This policy further prohibits employing a person based on a temporary certification when another applicant for the position holds the necessary certification.

43. Board Policy 3.112 (Certification and Records) required "professional personnel"—such as a principal—"shall meet the required standards of qualifications and certifications as prescribed by the Department of Education, [and] the [EPSB]...."

44. According to the KDE, Office of Career and Technical Education, policies, procedures, and regulations, an area technology center principal is required to hold a principal certification, as well as complete all coursework, before applying for the position. Moreover, a temporary certification is not allowed for the principal at an area technology center.

45. Both Redmond and Slusher had previously been denied the opportunity to apply for principal positions at area technology centers because they had not received their certifications when they sought to apply.

7

46. Redmond was told that even though she only had 2 classes left to complete, she could not apply because she "would need the certification in hand."

47. Slusher was told by the KDE back in 2018 that before she could be interviewed for an area technology center principal position, she had to have completed all the coursework and have the certification in hand.

48. At the time Slusher applied for the Bell County ATC principal position, she held a principal certification issued by the EPSB, thus qualifying her for the job.

49. She further possessed a bachelor's in science, a masters, and a Doctorate in Education and Development.

50. She also held numerous certifications, including, Rank I, National Board for Professional Teaching Standards Certification in Career & Technical Education, EA/YA, business and marketing (grades 5-12), science (grades 5-8), and computer instructional technology (grades p-12).

51. At the time Redmond applied for the Bell County ATC principal position, she held a principal certification issued by the EPSB, thus qualifying her for the job.

52. She also possessed an associate's degree in registered nursing, a bachelor's degree in nursing, a bachelor's degree in Career and Technical Education, and a master's degree in Career and Technical Education and Administration.

53. She further held numerous certifications, including, Rank I, Career and Technical Education- Occupation Based, and health science teacher.

54. Gann neither possessed a principal certification at the time he applied for the position nor had completed the coursework for this certification.

55. In fact, even if Gann could have been employed as an area technology center principal through a temporary certification, he did not qualify for that certification at the time he applied for the Bell County ATC position.

56. In order to qualify for a temporary certification, Gann had to submit a written letter of eligibility from the university along with his application.

57. Gann applied for the Bell County ATC principal position on October 2, he did not receive a written letter of eligibility from EKU until October 9, 2020.

### IV. The Interview Process and Gann Hired

58. On October 14, the Board contacted Slusher and Redmond advising them that they would be interviewed the following morning.

59. This was the first contact either Slusher or Redmond had with anyone about the principal position since they applied for the position.

60. The following day, Slusher was interviewed first by the committee, which consisted of Gambrel and Marth.

61. As Slusher was leaving her interview, she saw Gann waiting to be interviewed.

62. Slusher knew the Board had previously used a temporary certification to hire an unqualified Gann for a teaching position, which she had also applied for but was not hired.

63. In July of 2011, the Board needed to fill an open teaching position in business and marketing at Bell County High School.

64. Within 3 days of the job being posted, Gann was interviewed by the high school SBDM and hired for the position after the SBDM consulted with the principal.

9

65. At the time he was hired, Gann was not qualified to teach because he held no teaching certification. Instead, he was in the process of enrolling in school in order to obtain the necessary certification.

66. After Gann was selected, the high school principal asked the prior superintendent to request a waiver from KDE because Gann was hired before the job had been posted for the statutorily required 30 days.

67. The superintendent, however, did not request a waiver because, at the time, a waiver could not be granted as Gann did not hold a certification to teach.

68. Instead, a waiver could have only been granted after Gann received a Temporary Provisional Certification from EPSB. But, Gann could only receive that certification after he received a letter from a university saying he was enrolled in school, which he did not have at the time he applied and was hired.

69. KDE's Office of Education Accountability ultimately concluded that the superintendent violated KRS 160.380 by hiring Gann.

70. Redmond was scheduled to be interviewed second at 10:30 am.

71. When she arrived for her interview, temperatures were being checked for everyone who entered the building due to the Coronavirus and she was told to wait in the lobby until she was called back.

72. While waiting, Redmond saw Gann, inside the office area and waiting in the office next to Gambrel's office, where the interviews were taking place.

73. When Redmond was called back for her interview, she was told that they would not be asking her all of the interview questions, but instead, a shortened version of the questions.

74. Throughout most of the interview, Gambrel was distracted, appearing to be texting.

75. When he did participate, he discussed topics unrelated to the principal position.

76. At one point, Gambrel tried to question Redmond's response to a question, before Marth was forced to step in and explain to Gambrel how the Bell County ATC operated and did in fact have advisory committees.

77. Gann was interviewed last and was selected for the position.

78. On October 23, Gambrel called Redmond and left a message notifying her that she was not selected but if she had questions, to call him.

79. Redmond subsequently called Gambrel and asked why she was not selected.

80. Gambrel told her, she was lacking "nothing." Instead, Gann "had more to bring to the table."

81. At the time, Gann had never even stepped foot in the Bell County ATC.

82. Gambrel also called Slusher the same day.

83. During that call, Gambrel told her that her credentials were excellent.

84. When Slusher noted that Gann lacked the necessary certification to hold an area technology center principal position, Gambrel told her they were going to apply for a temporary certification.

85. Thus, Gann was given the opportunity to earn his certification while working in the position, while Plaintiffs were forced to earn their certifications prior to even applying for a principal position.

86. Gann's temporary certification was not approved until November 12; however, he started working as the principal 4 days earlier on the 9th.

87. This was the second time the Board elected to hire a principal that was not qualified within the last year.

88. In June of 2019, the Board hired another unqualified male principal, in lieu of selecting one of the qualified women candidates holding the necessary certification to be principal.

89. Similar to Gann, the Board allowed the male to be employed as a principal through a temporary certification.

90. In fact, the Board has a history of hiring men for principal/administration positions, especially at the secondary level, who do not hold the requisite certifications for those positions when they are hired. Instead, the Board uses the temporary certification to hire the unqualified male candidates over the qualified female candidates.

**V.   Slusher is Denied Gann's Old Teaching Job**

90. After not being selected for the principal position, Slusher's application remained on file with the Board.

91. According to Board policy, if another position for which she was qualified became vacant, and the position was also one she had indicated in her application she was interested in, her application would be considered for that position.

92. In addition to indicating an interest in the principal position, Slusher also indicated an interest in a teaching position with the Board.

93. After Gann became principal, the teaching position he vacated was posted.

94. Slusher was qualified for the position Gann vacated.

95. However, the posted position was subsequently removed and left unposted.

96. The Board later re-posted Gann's vacated position changing it from a business/marketing teacher to a marketing/special education teacher.

12

97. Gambrel posted the position this way to avoid interviewing Slusher because she did not qualify for a special education position.

98. Upon information and belief, Gambrel changed the position to further discriminate against Slusher and retaliate against her for complaining about being discriminated against on the basis of her age and sex, as well as filing an EEOC complaint.

## COUNT I
### (Federal and State Law Claims for Sex Discrimination)

99. Plaintiffs incorporate by reference, as if set forth fully herein, each and every averment, allegation, or statement contained in the previous paragraphs of this Verified Complaint.

100. Defendants, by and through its agents and employees, discriminated against Plaintiffs in the terms, conditions, and privileges of employment in various ways, in substantial part because of their sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* and the Kentucky Civil Rights Act, KRS 344.010 *et seq.*

101. The above-described discrimination resulted in Defendants' unjust failure to hire Plaintiffs, which interfered with their financial, mental and emotional well-being.

102. As a result of the failure to hire perpetuated by Defendants' employees and agents, Plaintiffs have suffered humiliation, emotional, mental, and financial distress.

103. Defendants' discriminatory practices alleged herein were done with malice and/or with reckless indifference to Plaintiffs' federally protected rights, making Defendants liable for compensatory and punitive damages pursuant to 42 U.S.C. §§ 1981a(a) & (b).

104. Plaintiffs' sex was a motivating factor in Defendants' decision not to hire them for the position of principal, instead, hiring an unqualified man for the position.

105. Defendants' actions on the basis of Plaintiffs' sex were willful and knowingly committed.

106. As a direct and proximate result of Defendant's wrongful conduct, Plaintiffs have suffered emotional distress and/or embarrassment and/or humiliation and/or mental anguish and/or wage loss and/or medical expenses.

## COUNT II
**(Federal and State Law Claims for Age Discrimination)**

107. Plaintiffs incorporate by reference, as if set forth fully herein, each and every averment, allegation, or statement contained in the previous paragraphs of this Verified Complaint.

108. Defendants' actions alleged herein constitute discrimination on the basis of age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*. and the Kentucky Civil Rights Act, KRS 344.010 *et seq*.

109. Defendants discriminated against Plaintiffs on the basis of their age by failing to hire them for the principal position because of their age.

110. At the time they were not hired, Plaintiffs were over the age of 40.

111. The person Defendants hired for the principal position was under the age of 40 at the time.

112. Plaintiffs held principal certifications and were otherwise qualified for the position they sought.

113. The person selected by Defendants for the position was not qualified when he was hired.

114. Defendants' actions were willful, wanton, malicious and/or in reckless disregard to the rights of Plaintiffs.

115. As a direct and proximate result of Defendants' willful, knowing, and intentional discrimination, Plaintiffs have suffered humiliation and emotional distress as well as have suffered and will continue to suffer loss of earnings, benefits and employment opportunities.

## COUNT III
### (Retaliation)

116. The Plaintiffs incorporate by reference, as if set forth fully herein, each and every averment, allegation, or statement contained in the previous paragraphs of this Verified Complaint.

117. As set forth above, Slusher complained about being discriminated against on the basis of her sex and age, as well as filed an EEOC complaint regarding the same.

118. As a result of Slusher's protected activity, she was subjected to adverse treatment including being further denied the opportunity to apply for a position she was qualified to hold.

119. As a direct and proximate result of the aforementioned conduct, Slusher suffered great distress and/or embarrassment and/or humiliation and/or mental anguish and/or wage loss and/or medical expenses in an amount, which exceeds the minimal jurisdictional limits of this Court.

**WHEREFORE,** the Plaintiffs, demand the following:

1. That they be awarded general and compensatory damages, including prejudgment interest, in an amount according to proof at trial;

2. That they be awarded punitive damages in an amount according to proof at trial;

3.      For injunctive relief including, but not limited to: Plaintiffs' placement in the position of principal or a position similar to the principal position and/or front wages; and full back pay for any and all wages and benefits lost.

4.      For Plaintiffs' costs herein incurred, including reasonable attorney's fees;

5.      For a trial by jury on all issues so triable; and

6.      For such other relief as they may appear entitled.


Respectfully Submitted,


*/s/ David N. Ward*
DAVID N. WARD
ADAMS LANDENWICH & WALTON, PLLC
517 West Ormsby Avenue
Louisville, Kentucky  40203
(502) 561-0085
david@justiceky.com
*Counsel for Plaintiff*

## VERIFICATION STATEMENT

I, Tammy Sue Redmond, after being duly sworn, state that I have read this Complaint and that the allegations contained therein are true and correct to the best of my knowledge and belief.

*Tammy S. Redmond*
TAMMY SUE REDMOND

## VERIFICATION STATEMENT

I, Stacie Slusher, after being duly sworn, state that I have read this Complaint and that the allegations contained therein are true and correct to the best of my knowledge and belief.

*/s/ Stacie Slusher*
STACIE SLUSHER