UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| TAMMY SUE REDMOND, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 6:22-CV-179-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| BELL COUNTY BOARD OF | ) | **AND ORDER** |
| EDUCATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

\*\*\*    \*\*\*    \*\*\*    \*\*\*

This matter is before the Court on the Motion for Summary Judgment on Retaliation Claim filed by Defendant Bell County Board of Education ("the Board"), [R. 42]. Plaintiffs Tammy Sue Redmond and Stacie Slusher[1] have filed a response, [R. 45], and the Board replied. [R. 47]. This matter is therefore fully briefed and ripe for review. For the reasons set forth below, the Court will grant in part and deny in part the Motion for Summary Judgment on Retaliation Claim.

## I. BACKGROUND[2]

This suit stems from the hiring process surrounding a principal position at the Bell County Area Technology Center ("ATC"), and the subsequent hiring process for a teaching position at Bell County High School. *See* [R. 1]. By way of background, the Bell County ATC is

---

[1] While both plaintiffs joined in the response, *see* [R. 45], the Court understands that the remaining retaliation claim applies to Slusher only, as discussed herein.

[2] The Court's September 6, 2024 Memorandum Opinion and Order provided a more detailed discussion of the facts surrounding Plaintiffs' discrimination claims. [R. 39, pp. 2–17]. Because those claims are not at issue here, the Court omits much of that factual background from this opinion.

one of fifty or so area technology centers that the Kentucky Department of Education ("KDE"), through the Office of Career and Technical Education ("OCTE"), operates across the state. [R. 1, ¶ 12]; *see also* [R. 24, pp. 1–2 (citing KRS § 156.802)]. Although the Bell County ATC serves the students of the Bell County Board of Education (hereafter, the "Board"), *see* [R. 24, p. 2], the Bell County ATC and the Board are separate entities. *See* [R. 1, ¶ 6]. The Board, in turn, is "a non-profit educational school district existing and organized pursuant to KRS § 160.160." *Id.* at ¶ 14. Tom Gambrel is the superintendent of the Board. *See* [R. 25-6, p. 6:9–10 (Gambrel Depo.)].[3]

In August 2020, the former principal of the Bell County ATC retired or resigned. *See, e.g.*, [R. 25-1, p. 25:3–7 (Marth Depo.)]; [R. 25-6, p. 9:32 (Gambrel Depo.)]; [R. 1, ¶ 19]. Redmond, Slusher, and Matthew Gann, a business education teacher at Bell County High School, each applied for the vacant principal position in the fall of 2020. *See* [R. 25-11]; [R. 25-13]; [R. 25-14]. On October 23, 2020, Gann, a male who was under forty at the time, was hired for the position. *See* [R. 25-9, 66:20–24 (Gann Depo.)].

On October 24, 2020, Redmond emailed the KDE and the OCTE. *See* [R. 45-3 (Oct. 24, 2020 Email, labeled as Exhibit 2)]. She requested "some information on who I need to speak with about teacher discrimination." *Id.* She explained that she had applied for the principal position, "along with another female whose qualifications were more advanced than mine." *Id.* She further explained, "We are over 50 years of age[,] highly qualified, certified and experienced for the position," but "[t]he other female and I were denied this position and the position was offered to a much younger male applicant who did not hold a principal certificate at all, and had no qualifications for the position." *Id.* She concludes her email by stating that "we were both

---

[3] When citing to deposition transcripts, the Court refers to the page number in the bottom right-hand corner of each transcript page.

discriminated against on gender and age, and the position was given to the only male applicant, who had no qualifications or certifications for the job." *Id.* Later that morning, Redmond's email was forwarded to Sarah Marth, the KDE area supervisor for the Bell County ATC. *Id.*; *see also* [R. 25-1, p. 15:3–20 (Marth Depo., describing her position)].

A couple of days later, on October 26, 2020, Marth texted Gambrel, asking him to "give [her] a call" because she "[n]eed[ed] to tell [him] something." [R. 45-4, p. 1 (Oct. 26, 2020 Text Messages)]. About an hour after this text, Marth again texted Gambrel, asking for "a copy of the job posting for the ATC Principal position." *Id.* In her deposition, Marth was asked whether these texts had "anything to do with the fact that Ms. Redmond sent an email inquiring about the proper process for filing a grievance about the interviews," to which she responded in the affirmative. [R. 25-1, p. 136:10–18 (Marth Depo.)]. She clarified, however, that she could not recall actually speaking with Gambrel on the phone that day. *Id.* at 136:21–25, 137:1–3.

The next day, on or about October 27, 2020, Slusher spoke on the telephone with Dean Knuckles, a member of the Board. [R. 45-5, ¶¶ 3–4 (Knuckles Declaration, labeled as Exhibit 4)]. During that call, Slusher informed Knuckles that Gambrel selected Gann, a younger man, for the principal position over Slusher and Redmond, "even though [Redmond and Slusher] were the most qualified candidates." *Id.* at ¶¶ 5–6. Knuckles has submitted a declaration to this effect (dated December 6, 2024), in which he notes that he "cannot remember whether he spoke directly to Mr. Gambrel about Slusher's complaint." *Id.* ¶ 7. His declaration then includes a paragraph stating that it "was known by everyone at the Bell County Board of Education, including Mr. Gambrel, that Ms. Slusher and Ms. Redmond were making complaints about Mr. Gambrel's decision to select a younger man for the ATC principal position instead of two older female candidates." *Id.* ¶ 8. However, on the declaration, the phrase "including Mr. Gambrel"

has been marked out, and Knuckles has written in, "I knew, I can't speak for anyone else." *Id.* at 2. Above his signature line at the end of the declaration, Knuckles again wrote in "I can only speak for myself." *Id.*

Because Gann accepted the principal position, his teaching position at Bell County High School became vacant. On October 29, 2020, a vacancy at Bell County High School for a "High School Classroom Instructor" in the subject area of "Business Education" was submitted on the Kentucky Educator Placement Service ("KEPS"). [R. 45-6 (KEPS Posting, labeled as Exhibit 5)].

While Slusher did not apply directly for this opening, she had indicated in her earlier application (for the principal position) that she was interested in other positions, including teaching positions. [R. 25-13, p. 3 (Slusher Application)]. She explained, and Gambrel confirmed, such applications are typically retained for three years and can be reviewed when new job vacancies are posted. *See* [R. 25-4, p. 44:3–8 (Slusher Depo.)]; [R. 25-6, p. 156:23–25 (Gambrel Depo.)]; [R. 45-7 (Bell County Policy 03.11)]. Despite her application being on file, Slusher "was not contacted in any way about that position." [R. 25-4, p. 76:1–6]. Gambrel explained in his deposition, however, that, typically, the on-file applicants have to first notify the district of their interest in a position before their prior applications are reviewed, unless there are no new applicants, in which case the district may initiate contact. [R. 25-6, pp. 158:3–25, 159:1]. Regardless, the Board appears to concede that Slusher did apply for the teaching position via her prior application indicating her interest in other teaching positions. [R. 42-1, pp. 5–6 (" . . . Slusher's retaliation claim fails because there is no causal connection between Slusher's EEOC complaint and the *teaching position she applied for . . . .*") (emphasis added)].

Slusher testified at her deposition that, at some point, the teacher position vacated by Gann was re-posted as "marketing/special education." [R. 25-4, p. 76:1–2]. In her briefing, she suggests that this occurred on or about November 5, 2020. [R. 45, p. 9]. However, Gann testified that, at the time he left that teaching position, he was not "teaching anything involving special needs," and was not licensed to teach special needs. [R. 25-9, p. 72:14–18]. And interestingly, Gann also testified that, in his years serving on the school's site-based decision-making council ("SBDM"), he could not recall a time when the council changed a class description midway through the year (i.e., after the master schedule has been released and the class had started). [R. 25-9, pp. 71:23–25, 72:1–6 (Gann Depo.)]. Ultimately, because the "job morphed into a special ed position," Slusher was no longer qualified for the position because she did not have a special education certification. [R. 25-4, p. 76:8–19].

Once the vacancy posted, Gambrel, as superintendent, was required to notify the Commissioner of Education of the new vacancy fifteen days prior to filling the position. [R. 45-7, p. 1]. However, the superintendent can request a waiver of the fifteen-day advance notice requirement "[w]hen a vacancy needs to be filled in less than fifteen (15) days to prevent disruption of necessary instructional or support services of the school District." *Id.* In the present case, a waiver was ultimately approved for Gann's vacant position. [R. 45-8 (Vacancy & Waiver Details, labeled as Exhibit 7)]. The waiver allowed the position "to be filled as soon as possible to insure (sic) consistent delivery of instruction." *Id.* The person named in the waiver was Tiffani Garnett. *Id.*

Slusher alleges, and the Board does not dispute, that Gambrel "submitted only one candidate," Mrs. Garnett, to the SBDM for consideration of the marketing/special education position. *See* [R. 45, p. 4]. On November 10, 2020, the SBDM interviewed Mrs. Garnett. [R. 45-

- 5 -

12, (SBDM Minutes, labeled as Exhibit 11)]. In her briefing, Slusher explains that Mrs. Garnett's husband, Josh Garnett, had been selected to fill Gann's newly vacant SBDM position, and he excused himself from the November 10, 2020 meeting prior to Mrs. Garnett's interview "due to conflict of interest." *Id.*; *see also* [R. 45, p. 4]. Ultimately, the SBDM recommended to Gambrel that Mrs. Garnett (the only candidate submitted to it by the Board) be hired for the "Business/Special Education position." [R. 45-12]. It appears that the Board discussed that hire at its next meeting. *See* [R. 42-4 (Board Meeting Minutes) (noting that the Board had received various personnel notifications, including Mrs. Garnett's hiring)].

Nearly two years later, Redmond and Slusher filed suit in this Court. The plaintiffs (who are both female and were over fifty at the time they applied) sued the Board and the KDE alleging discrimination "in failing to hire [the Plaintiffs] for a principal position because of their age, and/or sex." *See* [R. 1, ¶ 1]. Specifically, the complaint alleged three counts: (1) sex discrimination under federal law (Title VII of the Civil Rights Act of 1964) and state law (the Kentucky Civil Rights Act ("KCRA")); (2) age discrimination under federal law (Age Discrimination in Employment Act ("ADEA")) and state law (KCRA); and (3) retaliation related to Slusher only. *See* [R. 1].

The Board and the KDE ultimately filed separate motions for summary judgment as to the discrimination claims. [R. 17]; [R. 19]. On September 6, 2024, the Court granted summary judgment as to those two causes of action, leaving only Slusher's retaliation claim. [R. 39]. At the defendants' request, [R. 40], the Court allowed an opportunity for the parties to brief that remaining claim. [R. 41]. The Board then filed the pending motion, [R. 42], which has been fully briefed and is ripe for review. *See* [R. 45 (Response)]; [R. 47 (Reply)].

## II.  LEGAL STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When determining a motion for summary judgment, the Court must construe the evidence and draw all reasonable inferences from the underlying facts in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). The Court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

The initial burden of establishing that no genuine dispute of material fact exists rests with the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies this burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *Id.* at 324. When, as here, a defendant moves for summary judgment, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252.

Where "a party fails to support an assertion of fact or fails to properly address another party's assertion of fact," the Court may treat the fact as undisputed. Fed. R. Civ. P. 56(e)(2). A fact is "material" if the underlying substantive law identifies the fact as critical. *See Liberty Lobby*, 477 U.S. at 248. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A "genuine" issue

exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249.

### III. ANALYSIS

As an initial matter, the Court notes that the complaint fails to identify which statute Slusher relies upon for her retaliation claim. *See* [R. 1, ¶¶ 116–19]. In its motion, the Board analyzes the claim under Title VII. *See, e.g.*, [R. 42-1, p. 3]. However, in her response brief, Slusher cites to both Title VII and the KCRA. *See* [R. 45, p. 6]. Both statutes make it unlawful to discriminate or retaliate against a person because he or she has opposed a practice declared unlawful under these statutes (like age or gender discrimination), or because he or she has participated in a formal proceeding under these laws (like an EEOC investigation). *See* 42 U.S.C. § 2000e–3(a); KRS § 344.280(A). And "[r]etaliation claims under the KCRA are evaluated under the same standard [used] to evaluate federal Title VII claims." *Montell v. Diversified Clinical Services, Inc.*, 757 F.3d 497, 504 (6th Cir. 2014) (citations omitted). Thus, regardless of whether Slusher brings her retaliation claim under Title VII or the KCRA, or both, the analysis is the same.

In cases like this one, where there is no direct evidence of discrimination, the Court must analyze a plaintiff's retaliation claim under the burden shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Bashaw v. Majestic Care of Whitehall, LLC*, 130 F.4th 542, 548 (6th Cir. 2025). Thus, Slusher must first make a prima facie case of retaliation by showing (1) she engaged in a protected activity; (2) the defendant knew of her protected activity; (3) the defendant took an action that was "materially adverse" to Slusher; and (4) a causal connection between the protected activity and the materially adverse action. *Strickland v. City of Detroit*, 995 F.3d 495, 510 (6th Cir. 2021) (citation omitted); *see also*

- 8 -

*Montell*, 757 F.3d at 504 (citations omitted). This burden of demonstrating a prima facie case "is not onerous, but one easily met." *Funk v. City of Lansing, Michigan*, 821 F. App'x 574, 582 (6th Cir. 2020) (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 562 (6th Cir. 2000)) (internal quotation marks omitted). If Slusher meets this burden, the burden then shifts to the Board to provide legitimate, non-retaliatory reasons for the adverse action at issue. *See Strickland*, 995 F.3d at 510 (citations omitted); *Montell*, 757 F.3d at 504 (citation omitted). Once the Board provides such reasons, the burden shifts back to Slusher to show that the proffered reasons were pretextual. *See Strickland*, 995 F.3d at 510 (citations omitted); *Montell*, 757 F.3d at 504 (citation omitted). Through each phase of this burden-shifting framework, the burden of persuasion remains on Slusher. *Bashaw*, 130 F.4th at 548 (citation omitted).

In her complaint, Slusher alleges that she "complained about being discriminated against on the basis of her sex and age, as well as filed an EEOC complaint regarding the same," and as a result, "she was subjected to adverse treatment including being further denied the opportunity to apply for a position she was qualified to hold." [R. 1, ¶¶ 117–18]. The pleading does not identify any specific complaints made by either Slusher or Redmond, beyond their EEOC complaints. *See generally* [R. 1]. And in its motion, the Board focuses only on Slusher's filing of an EEOC claim, and it addresses only the fourth element of a prima facie case of retaliation: causal connection. *See* [R. 42]. It argues that Slusher's EEOC claim was filed in December 2020, well after the allegedly adverse action involving the Bell County High School teaching position, and as a result, the claim must fail. *Id.* In her response, Slusher appears to concede that her EEOC complaint cannot form the basis of her retaliation claim. [R. 45, p. 5 ("Slusher does not dispute that Gambrel learned of her EEOC complaint after Gann's vacant teaching position was already filled."); *see also Webb v. Paducah Bd. of Edu.*, 6:16-CV-130-TBR, 2018 WL 912499,

*6 (W.D. Ky. Feb. 14, 2018) (explaining that the alleged retaliatory conduct, termination, occurred before the plaintiff's EEOC proceedings, so the termination "was not due to her participation in a proceeding with the EEOC").

However, Slusher points to other alleged protected activities: Redmond's October 24, 2020 email and Slusher's October 27, 2020 phone call with Knuckles. [R. 45, pp. 7–8]. She argues that she can demonstrate a prima facie case of retaliation based on these alleged protected activities. *See id.* at 7–9. She also contends that the Board has not argued that it had a legitimate, non-retaliatory basis for its alleged adverse actions and that pretext can be shown because Mrs. Garnett was preselected for the position and was the only candidate submitted to the SBDM. *Id.* at 9–10. The Board replied, arguing that the teaching position always included a special needs instructor requirement, and thus there was no adverse action; the October 24, 2020 email does not qualify as a protected activity by *Slusher* because Redmond sent the email and she did not send it on Slusher's behalf; and Slusher cannot prove that the Board was aware of any informal (or formal) complaint by Slusher prior to the filing of her EEOC complaint. [R. 47]. In its reply brief, the Board does not address the causal connection element of a prima facie case of retaliation, offer any legitimate, non-retaliatory reasons for the alleged adverse action, or address pretext.[4] *See id.* From this, the Court understands that the Board challenges only Slusher's ability to prove a prima facie case of retaliation with respect to her informal complaints.

---

[4] The term "pretext" appears only once in the Board's briefing, in a heading which states, "Alternatively, even if this Court believes the vacant position included the special needs instructor requirement as pretext, the evidence does not support Slusher's Title VII Retaliation Claim." [R. 47, p. 2]. From this, the Court understands the Board's argument to be that, even if pretext is shown, Slusher cannot prove her claim. But the Board misapplies the law. Under *McDonnell Douglas*, the plaintiff must first prove a prima facie case of retaliation. *See Strickland*, 995 F.3d at 510 (citations omitted); *Montell*, 757 F.3d at 504 (citation omitted). If (and only if) the plaintiff proves a prima facie case, then the defendant must offer a legitimate, non-retaliatory reason for the adverse action, and only then will the Court consider pretext. *See Strickland*, 995 F.3d at 510 (citations omitted); *Montell*, 757 F.3d at 504 (citation omitted). Here, for the reasons outlined above, the Court finds that Slusher has met her burden of presenting a prima facie case of retaliation, but the Board has failed to provide a legitimate, non-retaliatory reason for the change in the position's requirements. Thus, the Court does not reach the issue of pretext.

Before turning to these arguments, however, the Court will address two threshold issues raised in the parties' briefing.

## A. Rule 56(f)(2)

First, the Court considers Slusher's position that the Court must deny summary judgment as to her informal complaints because the Board failed to address them in its motion, instead focusing solely on her EEOC complaint. [R. 45, p. 6]. In support of this argument, she cites to Federal Rule of Civil Procedure 56(f)(2), which provides that, "[a]fter giving notice and a reasonable time to respond, the court may . . . grant the motion on grounds not raised by a party." Fed. R. Civ. P. 56(f)(2). From this, the Court understands Slusher's argument to be that the Court should not grant summary judgment as to the informal complaints because the Board did not argue that point in its initial motion.

True, the entry of summary judgment on grounds not raised by the parties is "discouraged." *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 928 (6th Cir. 2013) (quoting *Excel Energy, Inc. v. Cannelton Sales Co.*, 246 F. App'x 953, 959 (6th Cir. 2007)) (internal quotation marks omitted). However, district courts may do so in "certain limited circumstances," so long as the losing party "was on notice that [it] had to come forward with all of [its] evidence." *Id.* (quoting *Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 931 (6th Cir. 2000)) (internal quotation marks omitted). Here, there is no question that the Board was on notice of the arguments relating to the informal complaints, as Slusher flushed those arguments out in her own response. *See* [R. 45]. Indeed, the Court questions whether Rule 56(f)(2) is even applicable here, where a party *did* raise these issues. Regardless, the Board was given a full opportunity to respond to those arguments in its reply brief, and indeed, it did discuss the informal complaints. *See* [R. 47, pp. 3–7]. The Court

- 11 -

therefore finds that the Board was on sufficient notice that the Court might deny summary judgment on Slusher's retaliation claim to the extent it was based on the informal complaints.

**B. Rule 37**

The Court next addresses the Board's allegation that Slusher failed to disclose her informal complaints in discovery, apparently referring to Redmond's October 24, 2020 email to the KDE and OCTE, and Slusher's October 27, 2020 complaint to Knuckles. The Board cites to Slusher's response to an interrogatory, in which she was asked to "[d]escribe in detail the factual bases for the allegation contained in Count III of your Complaint that the District retaliated against you," and to include "the date you base this allegation on, the specific concerns or communications which lead you to form this allegation, any other persons present at the time of said communications, and any response received or action taken as a result of said communications." *Id.* at 4; *see also* [R. 33-2, p. 12 (Interrogatory Responses)]. Slusher responded, "See Plaintiff's EEOC file in the attached documents. The file, along with the Complaint, set forth the facts relating to the retaliation claim Plaintiff has brought." [R. 33-2, p. 12]. As noted previously, Slusher's civil complaint does not specifically discuss Redmond's October 24, 2020 email or Slusher's October 27, 2020 call with Knuckles. *See generally* [R. 1]. The Board also argues that "Dean Knuckles' (sic) name was never mentioned by Slusher in discovery—nor anyone else affiliated with the Board or the KDE." [R. 47, p. 6].

To be clear, the Board does not ask the Court to disregard evidence of the informal complaints; it does not even cite the relevant rules. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."); Fed. R. Civ. P. 26(a)(1)(A)(i),

(ii) (requiring disclosure of individuals likely to have discoverable information and a copy of all documents that may be used to support the claims or defenses); Fed. R. Civ P. 26(e) (requiring supplementation and correction of initial disclosures when necessary). It is not even clear whether or to what extent Slusher's initial Rule 26 disclosures may have provided (or failed to provide) information about her informal complaints. Accordingly, to the extent the Board intended to invoke those rules and seek exclusion of evidence relating to the informal complaints, its argument is wholly undeveloped, and the Court need not consider it further. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–34 (1st Cir. 1995))) (internal quotation marks omitted).

Moreover, under the record before it, the Court would decline to exclude evidence of those complaints. First, when describing the basis for her retaliation claim in the complaint, Slusher clearly stated that she "complained about being discriminated against on the basis of her sex and age, *as well as* filed an EEOC complaint regarding the same." [R. 1, ¶ 117 (emphasis added)]. The record before the Court demonstrates that the parties had an adequate opportunity to explore these allegations in discovery, and indeed, they did so.

For instance, as part of written discovery, Slusher was asked to identify "each employee, agent, or representative of the District with whom [she] communicated regarding any of the allegations contained in" her complaint. [R. 33-2, p. 13]. She then identified Dean Knuckles and others and explained that she "told each of these individuals that a less qualified man was hired

for the principal position over [Slusher], which violated [the Board's] policies and the policies for the Kentucky Board of Education." *Id.* She also told these individuals that she was upset that a lesser qualified male applicant was hired over her, among other things. *Id.* Thus, to the extent the Board alleges that Slusher failed to disclose Knuckles's identity in discovery, it has misstated the record.

Accordingly, to the extent that Slusher may have failed to disclose Knuckles in her initial disclosures, as required by Rule 26, that non-disclosure was harmless, because the Board was aware through its written discovery that this individual had discoverable information. *See Miller v. Coty, Inc.*, 3:14-CV-443-CRS, 2018 WL 6728568, *2 (W.D. Ky. Dec. 21, 2018) (finding the plaintiff's non-disclosure to be "not harmful" to the defendant because the individual was ultimately disclosed in written discovery and deposition testimony); *Jackson v. Herrington*, 4:05-CV-00186-JHM, 2011 WL 1750800, *2–3 (W.D. Ky. May 6, 2011) (finding that initial non-disclosure of witnesses was harmless where the plaintiff was aware that the individuals had discoverable information and/or they were identified in documents produced during discovery). The same can be said for Redmond's October 24, 2020 email, as it clear from the deposition testimony that the Board was aware of that complaint. *See* [R. 25-1, p. 136:15–18 (referencing an email sent by Redmond "inquiring about the proper process for filing a grievance about the interviews").

 Having addressed these preliminary concerns, the Court next considers whether Slusher can demonstrate a prima facie case of retaliation.

### C. Prima Facie Case

As stated above, Slusher must first make a prima facie case of retaliation by showing (1) she engaged in a protected activity; (2) the defendant knew of her protected activity; (3) the

defendant took an action that was "materially adverse" to the plaintiff; and (4) a causal connection between the protected activity and the materially adverse action. *Strickland v. City of Detroit*, 995 F.3d 495, 510 (6th Cir. 2021) (citation omitted); *see also Montell*, 757 F.3d at 504 (citations omitted). At the summary judgment stage, the Court must determine "if a plaintiff has put forth sufficient evidence for a reasonable jury to find her to have met [these] prima facie requirements." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000). However, "all that is required of the plaintiff at this first inquiry is to 'demonstrate that [she] has a case, that the evidence is on h[er] side.'" *Brown v. Lexington-Fayette Urban Cnty. Govt.*, 483 F. App'x 221, 225 (6th Cir. 2012) (citing *E.E.O.C. v. Avery Dennison Corp.*, 104 F.3 858, 861 (6th Cir. 1997)). As already explained, this burden is "'easily met.'" *Funk*, 821 F. App'x at 582 (quoting *Nguyen*, 229 F.3d at 563); *see also Brown*, 483 F. App'x at 225 (stating this burden "is minimal" (citation omitted)).

### 1. Protected Activity

As to the first element, Title VII explains that a plaintiff engaged in protected activity if he or she (1) "opposed any practice made an unlawful employment practice by this subchapter," or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a); *see also* KRS § 344.280(A). Thus, there are two types of protected activity: participating in an EEOC proceeding and "opposition to an apparent Title VII violation." *Wasek v. Arrow Energy Services, Inc.*, 682 F.3d 463, 469 (6th Cir. 2012) (citation omitted). As already explained, Slusher's EEOC complaint, which was filed *after* the alleged adverse action in this case, does not form the basis for her claim of retaliation. The Court therefore considers whether Slusher expressed "opposition to an apparent Title VII violation." *Id.*

Examples of "opposing" conduct protected by Title VII includes "complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices." *Johnson v. University of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000) (discussing the EEOC's Compliance Manual). Here, Slusher cites to two such informal complaints: Redmond's October 24, 2020 email to KDE and OCTE and Slusher's October 27, 2020 phone call with Knuckles. [R. 45, pp. 7–8]. The Board does not dispute that these complaints were made, nor does it dispute that such informal grievances can constitute protected activity. Instead, the Board argues that Redmond's email is not a protected activity of *Slusher*, and Slusher's own informal complaint is "too vague to be considered a protected activity." [R. 47, pp. 4–5].

The Court first considers whether Redmond's October 24, 2020 email to KDE and OCTE may be considered a protected activity in this case. The Board argues that this email cannot constitute a protected activity of *Slusher* because it was written by Redmond and does not even mention Slusher by name, and there is no indication that Redmond is submitting the email on Slusher's behalf. [R. 47, pp. 3–4]. However, the Board cites no authority for this position. *See id.* The Court therefore considers this argument to be wholly undeveloped, and it need not consider it. *See McPherson*, 125 F.3d at 995–96.

Regardless, the Sixth Circuit has explained that an individual may demonstrate a prima facie case of retaliation where the protected activity at issue was undertaken by the individual's representative or agent. *See E.E.O.C. v. Ohio Edison Co.*, 7 F.3d 541, 545–46 (6th Cir. 1993) (explaining that Title VII's language "should be broadly construed to include a claim in which an employee, *or his representative*, has opposed any practice made an unlawful employment practice" (emphasis in original)). Other courts within this circuit have further clarified that such third-party actions may qualify as protected activity where the third-party "has acted *on behalf of*

- 16 -

or in a *representative capacity* to the other employee." *Paynter v. Licking Memorial Health Systems*, No. 2:07-CV-328, 2007 WL 2874804 at *3 (S.D. Ohio Sept. 27, 2007) (discussing *Ohio Edison* and others).

While neither party discusses this case law, the Court finds that, on the record before it, Slusher has at least put forth sufficient evidence for a jury to find that Redmond's October 24, 2020 email could have been made on behalf of both herself *and* Slusher. As already discussed, Redmond's email requested "some information on who I need to speak with about teacher discrimination." [R. 45-3]. She explained that she had applied for the principal position, "along with another female whose qualifications were more advanced than mine." *Id.* While she does not state Slusher's name, it is clear that Slusher was the only other female interviewed for the principal position, and Redmond is therefore referring to Slusher. Redmond then goes on to explain, "We [meaning Redmond and Slusher] are over 50 years of age[,] highly qualified, certified and experienced for the position," but "[t]he other female [meaning Slusher] and I were denied this position and the position was offered to a much younger male applicant who did not hold a principal certificate at all, and had no qualifications for the position." *Id.* She concludes her email by stating that "*we* were both discriminated against on gender and age, and the position was given to the only male applicant, who had no qualifications or certifications for the job." *Id.* (emphasis added). From this, it is clear that Slusher is claiming more than a mere association with an acquaintance who has complained of discrimination; instead, it appears Redmond operated as Slusher's representative when she complained of the alleged discrimination suffered by both herself and Slusher.

The Board next argues that Slusher's own informal complaint to Knuckles, a member of the Board, was "too vague to be considered a protected activity." [R. 47, pp. 4–5]. But this

argument is poorly developed and difficult to follow. The Board begins by arguing that Slusher never relied on any such informal complaints as the basis for her retaliation claim and instead relied solely on the EEOC complaint, citing to her interrogatory responses. [R. 47, p. 4]. To the extent this was the Board's attempt to invoke Rule 37 and seek exclusion of this evidence, the Court has already addressed that issue. *See supra* Section A(2). But in discussing Slusher's alleged failure to disclose these informal complaints in discovery, the Board makes a confusing leap, suddenly arguing that "Slusher's mere, informal (sic) 'complaints' contesting the correctness of the hiring of Gann are too vague to be considered a protected activity." [R. 47, pp. 4–5].

For support, the Board cites *Willoughby v. Allstate Ins. Co.*, 104 F. App'x 528 (6th Cir. 2004). *See* [R. 47, pp. 4–5 ("[S]imilar to the *Willoughby* decision, Slusher's mere, informal (sic) 'complaints' contesting the correctness of the hiring of Gann are too vague to be considered a protected activity. . . .)]. In that case, the Sixth Circuit held that a letter written by the plaintiff did not assert discrimination but instead contested the correctness of a decision made by his employer. *Willoughby*, 104 F. App'x at 531. The letter in question noted that 56% of the company's staff was black, and eleven of the last twelve employees to leave or be terminated were white, suggesting that these white employees were unhappy. *Id.* By citing this case, the Court understands that the Board is arguing that Slusher's informal complaint was too vague to constitute a legally sufficient complaint to management.

But beyond its citation to *Willoughby*, the Board makes no effort to explain its position. It does not discuss the substance of Slusher's informal complaint or explain how that complaint was vague or even similar to the one at issue in *Willoughby*. Given that this argument is undeveloped, the Court need not consider it further. *See McPherson*, 125 F.3d at 995–96. Nor

would the record support such an argument. In Knuckles's declaration, he notes that Slusher complained that she and Redmond had been the most qualified candidates for the principal position but were instead passed over for Gann, a younger male. [R. 45-5, pp. 1–2]. The declaration also references complaints by Slusher and Redmond "about Mr. Gambrel's decision to select a younger man for the ATC principal position instead of two older female candidates." *Id.* at 2. This is hardly vague. From this, a reasonable person would have been "on notice" that Slusher was protesting an act made illegal under Title VII and the KCRA, i.e., age and/or sex discrimination. *See Liebau v. Dykema Gossett, PLLC*, No. 23-1301, 2024 WL 1739750, *9 (6th Cir Apr. 23, 2024) (explaining that a plaintiff's complaint need not "be lodged with absolute formality, clarity or precision," but he or she must put the listener "on notice" that he or she is protesting an act made illegal by the relevant law (quoting *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 645 (6th Cir. 2015))).

Accordingly, the Court finds that Slusher has satisfied the "protected activity" prong of her prima facie case.

### 2. Defendant's Knowledge of the Protected Activity

The Court therefore turns to the second element of a prima facie case of retaliation: the defendant knew of the protected activity. *See, e.g.*, *Strickland*, 995 F.3d at 510. In this circuit, it is generally not sufficient to demonstrate "general corporate knowledge," and instead, the plaintiff must show that the *decisionmaker* had knowledge of his or her protected activities. *Keller v. Clean Harbors, Inc.*, 17-11807, 2019 WL 5800290, *7 (E.D. Mich. April 30, 2019) (citing *Evans v. Prof. Transp., Inc.*, 614 F. App'x 297, 300–301 (6th Cir. 2015)).[5] Here, the

---

[5] While the *Evans* case cited in *Keller* involved an FLSA retaliation claim, the *Evans* court cited to *Frazier v. USF Holland, Inc.*, 250 F. App'x 142, 148 (6th Cir. 2007), which did involve a Title VII retaliation claim, as did the *Keller* case.

parties do not dispute that the Board (through Gambrel, the superintendent of the Board) was the relevant decision maker.

As for Redmond's October 24, 2020 email, the Board concedes that Gambrel was aware of Redmond's email by October 29, 2020, the date when the teaching position was originally posted, but argues this complaint was related to Redmond (not Slusher) and was made to KDE and OCTE, not the Board. [R. 47, p. 5]. As for Slusher's complaints to Knuckles, the Board argues that there is no evidence that Gambrel was aware of such complaints. *Id.* at 5–7. Knuckles's declaration, however, indicates that he and possibly other members of the Board were aware of Slusher's complaints about age and/or sex discrimination. [R. 45-5]. Regardless, for the reasons outlined below, the Court finds that Slusher has satisfied the knowledge prong with respect to Redmond's October 24, 2020 email.

The Court has previously found that email to constitute a protected activity on behalf of both Redmond *and* Slusher. For those same reasons, Slusher has satisfied her burden of demonstrating that Gambrel (and the Board) had knowledge of the protected activity by October 26, 2020, *see* [R. 25-1, p. 136:10–18 (Marth Depo.)]; [R. 45-4, p. 1 (Oct. 26, 2020 Text Messages)], and certainly by October 29, 2020, given the Board's concession that Gambrel knew of Redmond's email by that date. [R. 47, p. 5]. The fact that Redmond's email was addressed to the KDE and OCTE is irrelevant; what matters is whether the decision maker had knowledge of the protected activity. *See Keller*, 2019 WL 5800290, at *7. As already noted, the parties do not dispute that the Board (through Gambrel) was the relevant decision maker.

Despite its arguments that the Board (through Gambrel) was the relevant decision maker, the Board confusingly argues in its initial motion that "the SBDM council was charged with looking at the available funds and determining the job classifications and personnel decisions at

the school level, and in this case, determined to create a special needs marketing business position based on those funds/allocations." [R. 42-1, p. 5]; *see also* [R. 25-6, p. 17:2–8 (Gambrel Depo., noting that, "at the school level, a lot of positions are qualified under the site-based council determination, and they make those hires")]. Interestingly, however, Gann testified that, in his years serving on the SBDM, he could not recall a time when the council changed a class description midway through the year (i.e., after the master schedule has been released and the class had started). [R. 25-9, pp. 71:23–25, 72:1–6 (Gann Depo.)]. Regardless, the Board had significant input in this hiring process. For example, Gambrel sought and obtained the waiver for Ms. Garnett so she could be hired without waiting for the advance-notice time period to expire, *see* [R. 45-8 (Vacancy & Waiver Details, labeled as Exhibit 7)], and the Board recommended only one candidate, Ms. Garnett, to the SBDM for consideration. The SBDM then interviewed *only* Mrs. Garnett, who they then "recommend[ed] that the superintendent [Gambrel] hire" for Gann's vacant teaching position. *See* [R. 45-12, (SBDM Minutes)]. And it appears that the Board ultimately discussed that hire at its next meeting. *See* [R. 42-4 (Board Meeting Minutes) (noting that the Board had received various personnel notifications, including Mrs. Garnett's hiring)].

Accordingly, the Court finds that Slusher has satisfied the "knowledge" prong of her prima facie case.

### 3. Adverse Action

The Court next turns to the third element of a prima facie case of retaliation, which requires the plaintiff to show that the defendant took an action that was "materially adverse" to the plaintiff. *See, e.g.*, *Strickland*, 995 F.3d at 510. Slusher argues that the Board "took an adverse action against [her] by changing the position Gann vacated from a business teacher to a business/special education teacher," thereby ensuring that Slusher was not qualified for the

- 21 -

vacancy and could not be hired. [R. 45, p. 8]. The Board does not dispute that such an action might qualify as a "materially adverse" action under Title VII[6]; instead, it argues that the teaching position details *always* included the special education requirement as of its posting on October 29, 2020, so there was no adverse action. [R. 47, pp. 1–2].

For support, the Board argues that Slusher only submitted the first two pages of the job posting in support of her response, but the Board provides what it alleges to be the full position posting. *Id.* at 2; *see also* [R. 47-1 (KEPS Posting)]. In this full posting, the Board alleges, "the complete description for the relevant position clearly includes a special needs instructor requirement," and thus, "the Board never unilaterally changed this position—it always included a special needs instructor requirement." [R. 47, p. 2]. As an initial matter, the Court has reviewed that document, however, and finds it unhelpful. Across the top of each page of the document is the date "December 13, 2024," suggesting that the posting was printed on that date. There is nothing in the document to indicate that it is the original posting from October 29, 2020, and the Board does not cite to any other evidence of record (affidavit, deposition testimony, etc.) to indicate that the job posting never changed. The Board has therefore failed to cite any evidence of record disputing Slusher's testimony that the position did, in fact, change after its original October 29, 2020 posting to include a new requirement that the teacher be certified to teach special education students. [R. 25-4, p. 76:1–2 (Slusher Depo.)].

---

[6] While the Court need not reach this issue given the Board's failure to raise it, the Court notes that "Title VII's antiretaliation provision prohibits any employer action that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Thompson*, 562 U.S. at 174 (quoting *Burlington N. & S.F.R. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). And in *Briggs v. University of Cincinnati*, 11 F.4th 498 (6th Cir. 2021), the Sixth Circuit suggested, albeit without deciding, that "pulling and altering the job description and requirements for" a certain position the plaintiff had expressed interest in, such that he was no longer qualified for the position, was a materially adverse action sufficient to satisfy the third prong of a prima facie case of retaliation under Title VII. *Id.* at 513–518.

But more importantly, the Board's argument views the adverse action too narrowly. Whether the initial posting on October 29, 2020 included the special education requirement, or whether it was added later, is immaterial. Slusher's core complaint is that the special education requirement was added *at all*. Specifically, she argues that the Board "took an adverse action against [her] by changing the position Gann vacated from a business teacher to a 'business/special education teacher' to ensure that "she was not hired or even was qualified to have her name submitted for the position." [R. 45, p. 8]. The timeline here supports the argument that the inclusion of the special education certification requirement even in the *original* posting (as the Board argues) could qualify as an adverse action. For instance, Redmond sent her email complaining of discrimination against herself and Slusher to the KDE and OCTE on October 24, 2020, Slusher made informal complaints to Knuckles on October 27, 2020, and the original job posting appeared on October 29, 2020. A reasonable juror could find that Gambrel was aware of Redmond's October 24, 2020 email, in which she engaged in the protected activity of complaining of discrimination on behalf of both herself and Slusher, by October 26, 2020, *see* [R. 25-1, p. 136:10–18 (Marth Depo.)]; [R. 45-4, p. 1 (Oct. 26, 2020 Text Messages)], or at least no later than October 29, 2020, as conceded by the Board, [R. 47, p. 5].  Thus, it is clear that the protected activity occurred, and the relevant decision maker had knowledge of the protected activity, no later than the very day the position was posted. Accordingly, even if that original job posting included a special education certification requirement, that original posting, which came *after* the informal complaints, could qualify as an adverse action. *See generally Briggs v. University of Cincinnati*, 11 F.4th 498, 513–18 (6th Cir. 2021) (suggesting that "pulling and altering the job description and requirements for" a certain position the plaintiff had expressed

interest in, such that he was no longer qualified for the position, was a materially adverse action sufficient to satisfy the third prong of a prima facie case of retaliation under Title VII).

The Court therefore finds that this third prong of Slusher's prima facie case is satisfied.

### 4. Causal Connection

Lastly, the Court turns to the final element of a prima facie case of retaliation, i.e., a causal connection between the protected activity and the materially adverse action. *See, e.g.*, *Strickland*, 995 F.3d 495 at 510. Slusher argues in her response brief that this element is satisfied because only a few days passed between the protected activity, i.e., the informal complaints, and the Board's knowledge of them on October 27, 2020[7] and the changing of the teaching position details on November 5, 2020. [R. 45, pp. 8–9]. Within this time period, it is also clear from the Board's own admission that Gambrel had knowledge of Redmond's October 24, 2020 email by no later than October 29, 2020. *See* [R. 47, p. 5]. The Board does not dispute this analysis, and it does not challenge this fourth element in any way with respect to these informal complaints. *See* [R. 42]; [R. 45]. The Court therefore understands that the Board does not dispute that this fourth element is satisfied, to the extent the retaliation claim is based on the informal complaints.

Moreover, even if the Court were to consider this issue, the alleged retaliatory conduct occurred within days of the protected activity. As already explained, Redmond sent her email on behalf of herself and Slusher on October 24, 2020, and Slusher complained to Knuckles on October 27, 2020. [R. 45-3 (October 24, 2020 Email)]; [R. 45-5 (Knuckles Declaration)]. The allegedly unnecessary special education certification requirement was included in the vacant

---

[7] As already noted, Redmond's email, in which she complains of discrimination, was sent on October 24, 2020. While Slusher does not cite to that date in her discussion of causation, the Court understands that that date is still close enough in time to the adverse action to satisfy the causation element. Regardless, the Board fails to address the causal connection element as it relates to the informal complaints.

teaching position posting on either October 29, 2020 (as the Board alleges) or November 5, 2020 (as Slusher suggests). *See* [R. 47, p. 2]; [R. 45, p. 9].

True, "[t]emporal proximity alone generally is not sufficient to establish causation." *Kenney v. Aspen Technologies, Inc.*, 965 F.3d 443, 448 (6th Cir. 2020) (citations omitted). And "[e]xceptions to this rule are 'rare,' even in instances involving relatively short time periods." *Id.* (citation omitted). But the Sixth Circuit has explained that temporal proximity alone *can* be enough to satisfy the causation element:

> Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.

*Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008)[8] (acknowledging "some confusion" among the case law but reconciling two lines of cases, some of which say that temporal proximity alone is not enough and others that say it can be sufficient). Here, on the record before the Court, the retaliatory action occurred only days apart from the protected activity and was therefore close enough in time to create a reasonable inference of causation. *See Singfield v. Akron Metropolitan Housing Authority*, 389 F.3d 555, 563 (6th Cir. 2004) (finding that three-month lapse between filing of discrimination charge and termination of employment was "significant enough to constitute sufficient evidence of a causal connection" for purposes of the plaintiff's prima facie case of Title VII retaliation).

---

[8] While *Mickey* involved a retaliation claim under the Age Discrimination in Employment Act ("ADEA"), its reasoning on this causation issue has been applied in Title VII retaliation cases. *See Smith v. City of Union, Ohio*, 144 F.4th 867, 878–79 (6th Cir. 2025); *Montell*, 757 F.3d at 505–06.

Accordingly, the Court finds that Slusher has satisfied her burden of demonstrating a prima facie case of retaliation as to each of the required elements, a burden which is "'not onerous, but [is] easily met.'" *Funk*, 821 F. App'x at 582 (quoting *Nguyen*, 229 F.3d at 563). As a result, the burden shifts to the Board to provide legitimate, non-retaliatory reasons for the adverse action at issue. *See Strickland*, 995 F.3d at 510 (citations omitted); *Montell*, 757 F.3d at 504 (citation omitted). If the Board provides such reasons, the burden shifts back to Slusher to show that the proffered reasons were pretextual. *See Strickland*, 995 F.3d at 510 (citations omitted); *Montell*, 757 F.3d at 504 (citation omitted). However, while Slusher has addressed pretext in her response brief, *see* [R. 45, pp. 9–10], the Board wholly failed to provide any legitimate non-retaliatory reasons for the adverse action at issue, and it failed to dispute Slusher's claims of pretext. As a result, and as already explained, the Court understands that the Board challenges only Slusher's ability to demonstrate a prima facie case of retaliation as to her informal complaints. But, as to each element of Slusher's prima facie case, the Board has failed to meet its burden of demonstrating that there is "no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because Slusher has satisfied her burden of demonstrating a prima facie case, the Court will deny the motion for summary judgment.

## IV. CONCLUSION

For the reasons set forth above, the Court will grant summary judgment on the retaliation claim, to the extent it is based on the filing of Slusher's EEOC complaint. However, to the extent that claim is based on Slusher's informal complaints, as outlined above, the claim survives.

Accordingly, **IT IS HEREBY ORDERED** as follows:

1. Defendant Bell County Board of Education's Motion for Summary Judgment on Retaliation Claim, [**R. 42**], is **GRANTED IN PART** and **DENIED IN PART**.

   a. The motion is **GRANTED** insofar as it seeks summary judgment on the retaliation claim, to the extent that claim is based on the filing of Slusher's EEOC complaint.

   b. The motion is **DENIED** insofar as it seeks summary judgment on the retaliation claim, to the extent that claim is based on the informal complaints discussed herein.

2. On or before **September 29, 2025**, the parties **SHALL** meet and confer and provide a Joint Status Report. The Joint Status Report **SHALL** advise as to whether any party requests that this matter be referred to a Magistrate Judge for settlement conference. If neither party desires a settlement conference, the parties **SHALL** provide three potential trial dates between November 1, 2025 and March 1, 2026, and an estimated length of trial.

This the 15th day of September, 2025.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY